04-CR-05192-MISC

Hon. Ronald B. Leighton

Received From
SEATTLE
APR 12 2004

_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

APR 08 2004   PM

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) NO. CR04-5192 RBL |
| v. | ) |
| | ) **PLEA AGREEMENT** |
| MARMARAS NAVIGATION LTD., | ) |
| Defendant. | ) |

The United States of America, by and through John McKay, United States Attorney for the Western District of Washington, Mark Chutkow, Assistant United States Attorney for said District, and James D. Oesterle, Special Assistant United States Attorney, and Defendant, MARMARAS NAVIGATION LTD. ("MARMARAS"), through its attorneys, Michael G. Chalos of Fowler, Rodriguez & Chalos and Todd A. Zilbert of Wood, Tatum, Sanders & Murphy, hereby enter into the following Agreement, pursuant to Federal Rules of Criminal Procedure 11(c)(1)(C):

1.    Waiver of Indictment.  Defendant, having been advised of the right to be charged by Indictment, agrees to waive that right and enter a plea of guilty to the charge brought by the United States Attorney in an Information.

2.    The Charge.  Defendant, through its authorized representatives, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enter a plea of guilty to Count 1 of the Information, charging MARMARAS, solely by and through the actions of the crew members of the vessel M/V AGIA EIRINI, with knowingly failing to

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

1  maintain an Oil Record Book in which disposals of oil residue and overboard discharges and
2  disposals of bilge water were fully recorded, in violation of Title 33, United States Code,
3  Section 1908(a), and Title 33, Code of Federal Regulations, Sections 151.25(a), (d) and (h).
4  By entering its plea of guilty, MARMARAS hereby waives any and all objections to the filed
5  charge based on the form of the charging Information.

6      3.    Elements of the Offense.

7          a.    To establish liability for the charged offense of violating the Act to
8  Prevent Pollution from Ships as charged in Count 1, in violation of Title 33, United States
9  Code, Sections 1908(a) and Title 33, Code of Federal Regulations, Sections 151.25(a), (d) and
10  (h), the government must prove that the Defendant, by and through the actions of its agents
11  and/or employees, knowingly failed to maintain an Oil Record Book in which disposals of oil
12  residue and overboard discharges and disposals of bilge water were fully recorded.

13          b.    Under well-established principles of corporate liability and *respondeat*
14  *superior*, as these principles apply in this case, the corporate defendant is liable for the actions
15  of its agents and employees, whether it knew of such actions or not. *New York Central and*
16  *Hudson River R.R. v. United States*, 212 U.S. 481, 495 (1909); *United States v. Beusch*, 596
17  F.2d 871 (9th Cir. 1979); *United States v. Hilton Hotels Corporation*, 467 F.2d 1004-1007 (9th
18  Cir. 1972).

19      4.    The Penalties.

20          a.    MARMARAS understands that the statutory penalties applicable to a
21  corporate defendant as a result of the actions of its agents and/or employees in failing to
22  maintain an accurate Oil Record Book in violation of Title 33, United States Code, Sections
23  1908(a), and Title 33, Code of Federal Regulations, Sections 151.25(a), (d) and (h), include a
24  maximum fine of up to Five Hundred Thousand Dollars ($500,000), a term of probation of up
25  to five (5) years, and a special assessment of Four Hundred Dollars ($400).

26          b.    MARMARAS further understands that, as to the count charged herein, it
27  may be fined under the Alternative Fines Provision set forth in Title 18, United States Code,
28  Section 3571(d), which provides: "If any person derives pecuniary gain from the offense, or if

PLEA AGREEMENT/MARMARAS, No. CR04-5192 RBL — 2
(cases\Agia Eirini\plea-marmaras.wpd)

UNITED STATES ATTORNEY
601 Union Street, Suite 5100
Seattle, Washington 98101-3903
(206) 553-7970

1 | the offense results in a pecuniary loss to a person other than the defendant, the defendant may
2 | be fined not more than the greater of twice the gross gain or twice the gross loss unless
3 | imposition of a fine under this subsection would unduly complicate or prolong the sentencing
4 | process."

5 |          c.   MARMARAS agrees that should the Court accept the terms of this Plea
6 | Agreement, the monetary penalty imposed by the Court consistent with this Rule 11(c)(1)(C)
7 | Agreement, including the special assessments and the fines, shall be paid at or before the time
8 | of sentencing.

9 |     5.   Rights Waived by Pleading Guilty.   MARMARAS understands that, by pleading
10 | guilty, it knowingly and voluntarily waives the following rights:

11 |          a.   The right to plead not guilty, and to persist in a plea of not guilty;

12 |          b.   The right to a speedy and public trial before an impartial jury;

13 |          c.   The right to the effective assistance of counsel at trial;

14 |          d.   The right to be presumed innocent until guilt has been established at
15 | trial, beyond a reasonable doubt;

16 |          e.   The right to confront and cross-examine witnesses against it at trial;

17 |          f.   The right to compel or subpoena witnesses to appear on its behalf at
18 | trial; and

19 |          g.   The right to appeal a finding of guilt or any pretrial rulings.

20 |     6.   Applicability of Sentencing Guidelines.   MARMARAS understands and
21 | acknowledges that the United States Sentencing Guidelines promulgated by the United States
22 | Sentencing Commission are applicable to the sentencing in this case, except that pursuant to
23 | USSG §§ 8C2.1, Chapter 8 of the United States Sentencing Guidelines is not applicable to the
24 | determination of the appropriate fine in this case.

25 |     7.   Sentencing Agreement.   Pursuant to Federal Rule of Criminal
26 | Procedure 11(c)(1)(C), the United States and MARMARAS agree that the sentence to be
27 | imposed by the Court shall be as follows:

28 |

PLEA AGREEMENT/MARMARAS, No. CR04-5192 RBL — 3
(cases\Agia Eirini\plea-marmaras.wpd)

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

1             a.   Fine.  MARMARAS shall pay a criminal fine in the amount of Two

2    Hundred Thousand Dollars ($200,000) for the count set forth herein, which includes an

3    amount paid in the form of community service as described below, which fine and community

4    service payment are due and payable at the time of sentencing. The parties stipulate and agree

5    that this amount is the maximum fine and monetary penalty that may be imposed under this

6    Agreement, regardless of whether or how the Court may allocate a portion of that sum to

7    community service payments.

8             b.   Mandatory Special Assessment.  MARMARAS shall pay a special

9    assessment of Four Hundred Dollars ($400) for Count 1.  The special assessment is due and

10   payable at the time of sentencing.

11            c.   Probation.  MARMARAS will be placed on organizational probation for

12   a period of three (3) years pursuant to USSG §§ 8D1.1 and 8D1.2.  The terms of probation

13   shall include the following specific provisions, in addition to the Court's standard conditions:

14            (1)   No Further Violations.  Defendant agrees that it shall commit no

15   further violations of federal, state or local law, including those laws and regulations for which

16   primary enforcement has been delegated to state authorities, and shall conduct all its

17   operations in accordance with the MARPOL Protocol (an international treaty implemented in

18   the United States by the "Act to Prevent Pollution from Ships" ("APPS"), 33 U.S.C. 1901, *et*

19   *seq.*).  The United States Attorney's Office for the Western District of Washington will not

20   consider as a violation of probation any minor deficiencies noted during U.S. Coast Guard

21   vessel examinations that are not regularly submitted by the U.S. Coast Guard for civil or

22   criminal action.  The government's position on whether a subsequent violation is an

23   appropriate basis for a probation violation does not bind the United States Probation Office or

24   the Court, and MARMARAS shall have the right to dispute and challenge any claim by the

25   government of a probation violation before the appropriate United States District Court.

26   Nothing herein shall prohibit the United States from proceeding administratively, civilly, or

27   criminally against Defendant in any separate proceeding for any alleged subsequent

28   environmental violations.

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

(2)  Environmental Management System/Compliance Plan. Consistent with the sentencing policies set forth in USSG § 8D1.4, MARMARAS agrees to develop, adopt, implement and fund the Environmental Management System/Compliance Plan ("EMS") attached hereto as Exhibit A.

(i)  MARMARAS shall be responsible for all costs associated with the development, implementation, maintenance and monitoring of the EMS.

(ii)  MARMARAS agrees that during the period of probation, and at all reasonable times and with as reasonable prior notice by the U.S. Attorney's Office for the Western District of Washington, as practicable, it will provide the U.S. Attorney's Office for the Western District of Washington with full access to its vessels listed in the EMS, as well as all facilities, employees, and records that are relevant to monitoring compliance with the terms and conditions of the EMS.

(iii)  If MARMARAS changes its name, the renamed company shall be obliged to meet all of the obligations of MARMARAS under this agreement. If MARMARAS merges with another company through a stock or asset purchase, the newly created or merged company shall be obliged to meet all of the obligations of MARMARAS under this agreement with regard to those vessels listed in the EMS and managed by MARMARAS at the date of the merger.

(3)  Access. Defendant agrees that during the period of probation, and at all reasonable times and with as reasonable prior notice by the United States as practicable, it will provide the United States with full access to its managed vessels listed in the EMS, as well as, all facilities, employees, and records that are relevant to monitoring compliance with the terms and conditions of the EMS.

(4)  Escrow Account. MARMARAS agrees to pay a total of Fifty Thousand Dollars ($50,000) to an escrow account established for the sole purpose of funding the development, implementation and monitoring of the EMS. The escrow account shall be established and fully funded at the time of sentencing. The terms of the escrow agreement shall be reviewed and accepted by the United States before the account is funded.

PLEA AGREEMENT/MARMARAS, No. CR04-5192 RBL — 5
(cases\Agia Eirini\plea-marmaras.wpd)

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

1  Expenditures of escrow funds shall be approved by the Independent EMS Consultant.
2  MARMARAS shall provide the United States with semi-annual trust fund activity reports
3  beginning sixty (60) days following sentencing. The semi-annual reports shall detail
4  expenditures made with trust account funds. MARMARAS agrees that the trust funds will
5  likely not cover the full cost of developing, implementing, and monitoring the EMS.
6  Consequently, MARMARAS agrees to assume all costs necessary to fully implement the EMS
7  regardless of whether there are sufficient escrow funds.

8           d.  Community Service.

9           (1)     The parties further agree, pursuant to Rule 11(c)(1)(C), that
10 execution of a portion of the Two Hundred Thousand Dollars ($200,000) criminal fine
11 payable by MARMARAS, in the amount of up to One Thousand Dollars ($100,000), shall be
12 allocated for the express purpose of MARMARAS applying this amount to performing
13 community service pursuant to USSG § 8B1.3, and in furtherance of the sentencing principles
14 provided in 18 U.S.C. § 3553(a). The explicit goal of the community service requirement to
15 be imposed on MARMARAS shall be to fund one or more projects for the benefit,
16 preservation, and restoration of the environment and ecosystems in the waters of the United
17 States adjoining the coastline of Washington State. The specific project or projects are to be
18 determined before imposition of sentencing in this case. The projects may be proposed by
19 MARMARAS but must be approved by the United States Attorney's Office for the Western
20 District of Washington.

21          (2)     Because the above payments are designated as community service
22 by an organization, MARMARAS further agrees that it will not seek any reduction in their tax
23 obligations as a result of these community service payments. In addition, since these
24 payments constitute community service as part of the total fine amount agreed upon in this
25 Agreement, MARMARAS will not characterize, publicize or refer to these community service
26 payments as voluntary donations or contributions.

27     8.  Application of the Agreement. This Agreement shall bind MARMARAS  and its
28 successors and assigns. MARMARAS, or its successors-in-interest, if applicable, shall

PLEA AGREEMENT/MARMARAS, No. CR04-5192 RBL — 6
(cases\Agia Eirini\plea-marmaras.wpd)

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

1   provide the United States Attorney's Office for the Western District of Washington and the

2   United States Probation Office for the Western District of Washington with immediate notice

3   of any name change, business reorganization, sale or purchase of assets, divestiture of assets,

4   or similar action impacting its ability to pay the fine or affecting this Agreement and the EMS.

5   No change in name, change in corporate or individual control, business reorganization,

6   change in ownership, merger, change of legal status, sale or purchase of assets, or similar

7   action shall alter Defendant's responsibilities under this Agreement.  Defendant shall not

8   engage in any action to seek to avoid the obligations and conditions set forth in this

9   Agreement.

10      9.   <u>Statement of Facts</u>.  The parties agree on the following facts in support of

11   Defendant's guilty plea.  Defendant admits that it is guilty under the principle of *respondeat*

12   *superior* of the charged offense.

13      *A.  Background*

14        a.  MARMARAS NAVIGATION LTD. ("MARMARAS") is a vessel
management company, incorporated and headquartered in Greece.  Acting both directly and
15   through its agents, MARMARAS manages and operates a fleet of ocean going vessels that
transport products around the world, including to and from United States ports.

16

17        b.  MARMARAS manages and operates the M/V AGIA EIRINI.  Over the
last several years, the M/V AGIA EIRINI has made a number of port calls in the United
States, including ports in the Western District of Washington.  MARMARAS is responsible
18   for the safe operation of the M/V AGIA EIRINI and for ensuring that the vessel complies with
all international laws and the laws of the United States when the vessel sails into or affects
19   United States waters.

20        c.  The M/V AGIA EIRINI typically operates with a crew of approximately
twenty-one seamen.  Eight seamen of different ranks work in the vessel's engine room,
21   including a Chief Engineer, a First Engineer, a Second Engineer, a Third Engineer and four
Oilers.  During the time relevant to this Agreement, the Chief Engineer had overall
22   responsibility for engine room operations and reported directly to the Captain, who was
responsible for all vessel operations.  Each Engineer is paired with one Oiler and together
23   they work two four-hour shifts per day.

24        d.  Large ocean going vessels, like the M/V AGIA EIRINI, produce waste
oil as a result of the operation of machinery in the engine room.  Some of the waste oil,
25   together with water and other liquids, accumulates in the bottom or "bilges" of the vessel
within the engine room.  This waste liquid typically drains into the "bilge wells," small
26   compartments set into the bottom of the engine room compartment.  The bilge waste is then
collected and run through various processes designed to separate the oil and other wastes from
27   the water.  These processes include settling tanks and an "Oil Water Separator" (also known as
a Bilge Water Separator), a pollution control device designed to remove or separate out
28   oil.  After processing by the Oil Water Separator, bilge water containing fifteen (15) parts per
million or less of oil may be legally discharged overboard.  Oil removed from the bilge waste,

PLEA AGREEMENT/MARMARAS, No. CR04-5192 RBL — 7
(cases\Agia Eirini\plea-marmaras.wpd)

along with other waste oils from the ship, are stored in a sludge tank. Some ships burn the sludge in an incinerator or in the vessel's auxiliary boiler. Oil contaminated bilge waste and other waste oils, including sludge, may also be off-loaded while the vessel is in port and properly disposed of onshore.

       e.    The MARPOL Protocol and the APPS require that each oil tanker of 150 gross tons or more, or non-tanker vessels of more than 400 gross tons, maintain an "Oil Record Book" (or "ORB"). All transfers of oil, disposal of sludge and bilge water, and overboard discharges of bilge water that have accumulated in machinery spaces and are thus contaminated with oil, must be fully recorded in the ORB. 33 C.F.R. § 151.25(d). The Captain of the ship must sign every completed page of the Oil Record Book. *Id.* at § 151.25(h). The Oil Record Book must be maintained onboard for not less than three years and must be kept onboard the vessel readily available at all reasonable times.

       f.    Federal regulations authorize the U.S. Coast Guard to board and inspect all vessels in United States ports to determine compliance with federal regulations and the MARPOL Protocol. 14 U.S.C. § 89, 33 C.F.R. § 151.25. The inspection typically includes an examination of the ORB. The U.S. Coast Guard relies upon the accuracy of information contained in the ORB to assist in assessing the vessel operator's compliance with all applicable rules and regulations.

### B. Factual Basis For Plea

       g.    Inspectors with the United States Coast Guard boarded the M/V AGIA EIRINI on April 24, 2003 at the Port of Kalama in Kalama, Washington to conduct an annual port state control examination. During the course of the exam, Coast Guard personnel discovered a flexible hose fitted with flanges. In addition, the inspectors discovered chipped paint on valves, bolts and on the vessel bulkhead in the vicinity of the Oil Water Separator and overboard discharge valve. Finally, the inspectors noted that the vessel incinerator appeared to be incapable of burning all of the waste oil sludge produced by the vessel on a daily basis. Despite repeated efforts, the crew was unable to demonstrate to the inspectors that the incinerator could handle the amount of waste oil sludge produced by the vessel under normal working conditions.

       h.    The captain of the M/V AGIA EIRINI presented the ORB to the Coast Guard inspectors. All of the entries in the ORB appeared to be complete. The entries were not, however, consistent with the inspectors' findings. According to the ORB, engine room crew members were operating the incinerator for approximately twenty hours a day nearly every day for the stated purpose of burning waste oil sludge. The inspectors concluded that the incinerator was incapable of being operated for that long and could not burn all of waste oil sludge produced by the vessel.

       i.    The Oil Record Book presented to the inspectors during their examination failed to accurately record the operations required under the regulations. MARMARAS maintains that the above actions of the vessel's crew and/or condition of the equipment were not known to it. Even if such actions were unknown to MARMARAS, it is nevertheless vicariously liable for the engine room crew's failure to maintain an accurate ORB for the M/V AGIA EIRINI in which the disposals of oil residue and overboard discharges and disposal of bilge water were fully recorded.

//

//

//

PLEA AGREEMENT/MARMARAS, No. CR04-5192 RBL — 8
(cases\Agia Eirini\plea-marmaras.wpd)

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

10.    <u>Non-Prosecution of Additional Offenses</u>.

      a.   As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute MARMARAS for any additional offenses that arise out of the conduct giving rise to this investigation.

      b.   Nothing contained in this Agreement is meant to limit the rights and authority of the United States to take further civil or administrative action against MARMARAS, including but not limited to, any listing and debarment proceedings to restrict rights and opportunities of MARMARAS to contract with or receive assistance, loans, and benefits from United States agencies. The parties understand, however, that based on information known to the United States Coast Guard, Thirteenth Legal District, that agency does not intend to pursue any civil penalties based upon the subject matter of this Agreement.

      c.   This plea agreement does not limit the right of MARMARAS or the United States to speak at the time of sentencing or in connection with the presentence investigation, consistent with the provisions set forth in this plea agreement, to provide the Court or the United States Probation Office with evidence of all relevant conduct committed by the Defendant. The parties agree that at sentencing each will support the agreed disposition set forth in this Plea Agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).

11.    <u>Corporate Authorization</u>. MARMARAS represents that it is authorized to enter into this Agreement. On or before the date of entry and filing of the Plea Agreement, MARMARAS shall provide to the United States and the Court a written statement in the form of notarized legal documents certifying that the Defendant is authorized to enter into and comply with all of the provisions of this Plea Agreement. The resolution shall further certify that the President or Chief Operating Officer, or their designee, is authorized to take these actions, and that all corporate formalities for such authorizations have been observed.

12.    <u>Waiver of Appeal</u>. MARMARAS is aware that 18 U.S.C. § 3742 gives the right to appeal the sentence to be imposed, and that other federal statutes give a defendant the right to appeal other aspects of the conviction. In consideration of the agreement of the

PLEA AGREEMENT/MARMARAS, No. CR04-5192 RBL — 9
(cases\Agia Eirini\plea-marmaras.wpd)

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

1  United States as set forth herein, MARMARAS  knowingly and voluntarily agrees to waive
2  the following rights:
3            a.   The right, conferred by 18 U.S.C. § 3742, to appeal any
4  sentence imposed by the Court for the conviction of this offense;
5            b.   The right to appeal any aspect of Defendant's conviction, including any
6  pre-charge or pre-trial dispositions of motions or other issues; and
7            c.   The right to bring any collateral attack against MARMARAS 's
8  conviction or sentence, except as it may relate to the effectiveness of legal representation.
9      13.   Voluntariness of the Plea. MARMARAS  acknowledges that it has entered into
10  this Plea Agreement freely and voluntarily and it has been fully advised by counsel, and that
11  no threats or promises were made to induce it to enter into the guilty pleas called for by this
12  Agreement.
13      14.   Statute of Limitations.  In the event that this Agreement is not accepted by the
14  Court for any reason, or it is determined by the Court that MARMARAS breached any of the
15  terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled
16  from the date of the Plea Agreement to: (1) 30 days following the date of non-acceptance of
17  the Plea Agreement by the Court; or (2) 30 days following the date on which a breach of the
18  Plea Agreement by Defendant is adjudicated by the US District Court.
19  //
20  //
21  //
22  //
23  //
24  //
25  //
26  //
27  //
28  //

PLEA AGREEMENT/MARMARAS, No. CR04-5192 RBL -- 10
(cases\Agia Eirini\plea-marmaras.wpd)

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

1    15.    Completeness of Agreement.  The United States and MARMARAS

2  acknowledge that these terms constitute the entire Plea Agreement between the parties.  This

3  Agreement only binds the United States Attorney's Office for the Western District of

4  Washington.  It does not bind any other United States Attorney's Office or any other office or

5  agency of the United States, or any state or local prosecutor, except as provided herein.

6         Dated this ___8th___ day of ____April_____, 2004.

7

FOR THE UNITED STATES:                   FOR DEFENDANTS:

8

9                                                              /s/

10 _____              _____
   FLOYD G. SHORT
   Assistant United States Attorney         Member of the Board of Directors

11                                          MARMARAS NAVIGATION LTD.

12

13 _____
   MARK CHUTKOW

14 Assistant United States Attorney                    /s/

15                                          _____
                                            MICHAEL G. CHALOS
                                            Fowler, Rodriguez & Chalos

16                                          Co-Counsel for MARMARAS
   _____                NAVIGATION LTD.

17 JAMES D. OESTERLE
   Special Assistant United States Attorney

18                                          TODD A. ZILBERT
                                            Wood, Tatum, Sanders and Murphy

19                                          Co-Counsel for MARMARAS
                                            NAVIGATION LTD.

20

21

22

23

24

25

26

27

28

UNITED STATES ATTORNEY
601 Union Street, Suite 5100
Seattle, Washington 98101-3903
(206) 553-7970

15.   Completeness of Agreement.   The United States and MARMARAS acknowledge

that these terms constitute the entire Plea Agreement between the parties.   This Agreement only

binds the United States Attorney's Office for the Western District of Washington.   It does not

bind any other United States Attorney's Office or any other office or agency of the United

States, or any state or local prosecutor, except as provided herein.

Dated this 8th day of April, 2004.

FOR THE UNITED STATES:

/s/

FLOYD G. SHORT
Assistant United States Attorney

/s/

MARK CHUTKOW
Assistant United States Attorney

/s/

JAMES D. OESTERLE
Special Assistant United States Attorney

FOR DEFENDANTS:

Member of the Board of Directors
MARMARAS NAVIGATION LTD.

MICHAEL G. CHALOS
Fowler, Rodriguez & Chalos
Co-Counsel for MARMARAS
NAVIGATION LTD.

TODD A. ZILBERT
Wood, Tatum, Sanders and Murphy
Co-Counsel for MARMARAS
NAVIGATION LTD.

601 Union Street, Suite #3101
Seattle, Washington 98101-3903
(206) 553-7970

UNITED STATES ATTORNEY